**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JAMAIL CHRISTOPHER BISCAINO, | : | CIVIL ACTION NO. |
| BOP Reg # 63184-019, | : | 1:13-CV-1057-ODE-JSA |
| Movant, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 1:11-CR-455-ODE-JSA-3 |
| | : | |
| UNITED STATES OF AMERICA, | : | MOTION TO VACATE |
| Respondent. | : | 28 U.S.C. § 2255 |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant, a federal prisoner, challenges via 28 U.S.C. § 2255 his guilty plea in this Court and his resulting 87-month sentence. Now before the Court are Movant's § 2255 motion (Doc. 191), the Government's response (Doc. 196), and Movant's reply (Doc. 197). For the reasons set forth below, **IT IS RECOMMENDED** that the § 2255 motion be **DENIED**.

## I.     Indictment, Guilty Plea, and Sentencing

On September 27, 2011, a grand jury sitting in the Northern District of Georgia indicted Movant and his two accomplices for armed bank robbery (count one) and for carrying and using firearms during the robbery (count two). (Doc. 1-1). On January 25, 2012, Movant pled guilty to count one, and the Government agreed to dismiss count two, which carried a mandatory consecutive seven-year term of imprisonment.

(Doc. 57; *see* Doc. 57-1; Doc. 68 (Plea Hr'g Tr.); Doc. 157; Doc. 196 at 16-18, 22-23).

Included in Movant's Guilty Plea and Plea Agreement was the following agreement:

> The Defendant agrees that in consideration for the Government's agreement to resolve this case by allowing Defendant to plead guilty to the offense set out in Count One of the Indictment and by agreeing to dismiss Count Two of the Indictment, the Defendant and the Government shall recommend that the Court impose a sentence at the top of the advisory guidelines sentencing range. The Defendant agrees that he will not seek a USSG § 5K2 departure or an 18 U.S.C. § 3553(a) variance for a sentence below the statutorily authorized maximum sentence.

> *The Defendant acknowledges that this plea agreement is based on his agreement to cooperate with the Government and that the Government will not recommend any further sentence reductions.*

(Doc. 57-1 at 5 (emphasis added)).

Also included in the Plea Agreement was a Limited Waiver of Appeal:

> To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any postconviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or a variance from the sentencing guideline range as calculated by the district court. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

(*Id.* at 8). Movant signed the Guilty Plea and Plea Agreement, and then separately

2

signed the following acknowledgement:

> I have read the Indictment against me and have discussed it with my attorney.  I understand the charges and the elements of each charge that the Government would have to prove to convict me at a trial.  I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney.  I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them.  I also have discussed with my attorney the rights I may have to appeal or challenge my conviction and sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding.  No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement.  The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my permission.  *I am fully satisfied with the representation provided to me by my attorney in this case.*

(*Id.* at 9-10 (emphasis added)).

At Movant's plea hearing, the Court informed Movant that, among other things, "the plea agreement says that you and the Government have an agreement or understanding that in exchange for the Government's dismissing count two of the indictment, that both sides will recommend that [the Court] impose a sentence at the top of the advisory guideline sentencing range," and Movant stated that he was aware of that fact.  (Doc. 68 at 9).  The Court later asked Movant if "the Government promised you anything to get you to plead guilty in this case that is not in the written

3

plea agreement," and Movant replied that it had not.  (*Id.* at 10).

On November 1, 2012, the Court sentenced Movant to an 87-month term of imprisonment for armed bank robbery.  (Doc. 159; *see* Doc. 195 (Sentencing Hr'g Tr.)).

## II.   **The Parties' Arguments**

### A.   **Movant's § 2255 Motion to Vacate**

In his motion to vacate, Movant claims that his trial counsel was ineffective during the plea negotiations, rendering his plea and appeal waiver involuntary.  (Doc. 191 at 4).  He states that, initially, he agreed to the Government's original plea offer to dismiss count two and to recommend a sentence at the high end of the sentencing range for count one.  (*Id.*).  About a month thereafter, however, "defense counsel conveyed to [him] that, in exchange for his 'cooperation' (i.e., testimony) regarding co-defendant Dyson McCray, who went to trial, the AUSA would file a 'sentence reduction' motion for [his] cooperation."  (*Id.*).  Although Movant did cooperate, counsel failed to have his cooperation agreement memorialized in writing.  Therefore, Movant "withdrew from the initial plea based on counsel's erroneous inducements. [Movant] received 87 months and no sentence reduction as understood by [him] and promised by defense counsel which induced [him] to accept the latter plea offer."

4

(*Id.*).

Movant elaborates on his factual allegations as follows.  In December 2011, counsel presented him with a plea offer from the Government, which he agreed to accept, although counsel incorrectly calculated his sentencing range as 57-71 months, which this Court later correctly calculated as 70-87 months.  (*Id.* at 15).  Shortly thereafter, counsel told him that the Government "would file a motion for sentence reduction in [his] behalf pursuant to U.S.S.G. § 5K1" if Movant would testify against McCray at the latter's upcoming trial.  (*Id.* at 16).  Counsel then presented him with a revised plea offer, requiring him to cooperate, but which "failed to include the promise of a sentence reduction in exchange for [his] testimony and cooperation." (*Id.*).  However, counsel assured Movant that if he testified at McCray's trial, the Government would file a substantial assistance motion on his behalf.  Movant claims that, based on this advice, he withdrew from his initial plea deal and "accepted the latter, cooperation-plea."  (*Id.*).

Movant states that at his plea hearing, he was nevertheless denied a 5K1 reduction, which was offered to McCray's other cooperating co-defendant (Daniels), and that his counsel failed to tell the Court of the change in his plea arrangements and "that she [had] informed [Movant that] he would receive a 5K1 reduction in exchange

for his cooperation." (*Id.* at 17).  Movant claims that counsel provided ineffective assistance by failing to memorialize the cooperation plea agreement and advise him properly during plea negotiations, and by misrepresenting to him that the Government had agreed to file a sentence reduction motion in exchange for his cooperation.  (*Id.*). Movant asserts that but for counsel's ineffectiveness, he would have retained the original December 2011 plea deal for the same benefit without requiring his cooperation or he would have "negotiated a plea offer that memorialized a lesser sentence . . . or stood trial."  (*Id.* at 17-18).

Movant argues that his appeal waiver does not bar his claim in this § 2255 action that he was induced to plead guilty by his counsel's ineffectiveness for failing to memorialize the Government's purported offer to move for a reduction in his sentence in exchange for his testimony at McCray's trial.  Movant notes that, as a result of counsel's ineffectiveness, he was forced to enter into the exact same plea deal that he had accepted in December 2011, despite the additional burden of testifying at McCray's trial.  (*Id.* at 19-20).  Movant states that "if, in fact the prosecutor did promise to file a motion for sentence reduction in return for [his] testimony against McCray at trial[,] then[] it was ineffective assistance of counsel . . . in failing to memorialize the alleged 'reduction' plea-term . . . [so as] to erroneously induce

6

[Movant] into withdrawing from one plea and entering the relevant plea." (*Id.* at 21). Movant contends, "It is impossible to logically conceive that [he] would cash in one plea offering 71 months simply in exchange for his guilty plea to be replaced by another plea that offers 87 months in exchange for his guilty plea and agreement to fully cooperate and testify in behalf of the government." (*Id.* at 25). Movant contends that had counsel offered competent assistance, the outcome of his plea negotiations would have been different, as he would have sought a reduction from his 87-month sentence or he would have refused the Government's cooperation plea deal altogether and retained his original plea deal. (*Id.* at 26).

## B.    The Government's Response

The Government responds first by explaining the history of the Plea Agreement that Movant eventually signed.  (Doc. 196 at 4-6).  The first plea offer from the Government, dated December 21, 2011, included only the first full paragraph of the Charge Bargain section contained in the final Plea Agreement.  (*Id.* at 4; *see* Doc. 191 at 34).  After an exchange of emails between the Government and defense counsel, a second paragraph was added to the Charge Bargain section in late January 2012, indicating that "no further sentence reductions would be forthcoming" based on Movant's cooperation with the Government. (Doc. 196 at 5-6; *see* Docs. 196-1, 196-2,

7

196-3, 196-4 (Exs. to Gov't Resp.)).  The Government states that it had originally informed Movant that his sentencing range would top out at 71 months, but later "realized that the criminal history category might be higher, and changed the wording of the plea agreement to read top end of the guideline range as reflected in both drafts of the plea agreement."  (Doc. 196 at 5 n.3).

The Government notes that at Movant's plea hearing, he acknowledged that he had reviewed his Plea Agreement with his attorneys;[1] was aware that "in exchange for the government's dismissing count two of the indictment, that both sides will recommend that [the Court] impose a sentence at the top of the advisory guideline range"; had not received from the Government any promises to induce him to plead guilty other than those contained in the Plea Agreement; and had received from the Court at the plea hearing "a fair understanding" of his plea and its consequences.  (*Id.* at 7-8 (citing Doc. 68 at 2-6, 9-10, 20-21)).[2]  The Government notes further that Movant acknowledged in his sworn testimony at McCray's trial on July 19, 2012 that

---

[1] The Government also notes that Movant had two defense attorneys, although Movant claims that only one of them, Angela Duncan, provided ineffective assistance.  (Doc. 196 at 11 n.7).

[2] Movant was also informed that the maximum sentence for his armed bank robbery conviction was twenty-years' imprisonment.  (*See* Doc. 68 at 5-6).

as a result of his testimony that day the Government "will not recommend any further sentence reduction" for him.  (*Id.* at 8-9 (citing Doc. 182 (McCray Trial Tr. at 446))). Finally, the Government notes that at Movant's sentencing hearing, neither Movant nor his counsel contested the difference between Daniels' plea agreement, which allowed for a 5K1 sentence reduction, and Movant's, which did not.  (*Id.* at 10 n.5).

The Government observes that for Movant to prevail on his claim that counsel's ineffectiveness adversely affected his plea negotiations, Movant

> "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it . . .), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less."

(*Id.* at 13-14 (quoting *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012), and also citing *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012), to the effect that a defendant must make a similar showing regarding the rejection of an earlier plea offer upon the advice of counsel)).

The Government argues that "the record demonstrates [that] there simply was no rejection or lapse of a 'better' plea offer containing both a dismissal of Count Two and a further reduction of [Movant's] sentence for cooperation," and, moreover,

9

Movant "could not have been misled by counsel as to the content of the plea deal he accepted, as [the] deal was reviewed by him and knowingly and voluntarily entered." (*Id.* at 14).   The Government notes that the Charge Bargain portion of the Plea Agreement "was never a point of contention," although counsel negotiated other portions of the agreement and requested a binding plea agreement, which the Government rejected, after which Movant agreed to the plea offer anyway.  (*Id.* at 15). The Government argues that while Movant negotiated the contents of the Factual Basis section of the Plea Agreement, he did not negotiate the Charge Bargain, revealing "his claims now for what they are: fabrications after the entry of his guilty plea and imposition of his sentence."  (*Id.* at 16).

> Thorough review of the email correspondence between counsel and the two versions of the plea agreement[] reveals that a core element of [Movant's] ineffective assistance of counsel claim, defense counsel's alleged fumbling of a plea offer that would provide for both dismissal of Count Two and a reduction of sentence based on [Movant's] cooperation and testimony at trial, never happened. *No such deal was ever offered.*

(*Id.* (emphasis added)).   The Government acknowledges that the allegedly "new" version of the Plea Agreement required Movant to cooperate without a promise of a sentence reduction.  The Government notes, however, that neither draft of the Plea Agreement offered Movant a sentence reduction beyond the elimination of the

10

mandatory consecutive seven-year sentence for a count-two conviction, and it was this unchanging provision of the plea offer to which Movant agreed knowingly and willingly, and about which he testified accurately at McCray's trial.[3] (*Id.* at 16-18). Movant's "cooperation was contemplated by the plea agreement and a prerequisite for the government dropping Count Two, the gun charge which carried an additional seven years. There was no 'better' plea offer withdrawn." (*Id.* at 17-18).

The Government—relying upon (1) Movant's plea colloquy, during which he acknowledged that he had read the Plea Agreement and understood the deal he was getting, was satisfied with his counsel's performance, and was pleading guilty freely and voluntarily; (2) Movant's sentencing colloquy, during which he failed to object to the lack of a further sentence reduction or to the sentence he ultimately received; and (3) Movant's testimony at McCray's trial, to the effect that no further sentence reduction was contemplated by the plea agreement—argues that Movant knowingly and voluntarily accepted a Plea Agreement stating explicitly that the Government would not recommend any further sentence reductions. (*Id.* at 18 *et seq.*). The Government notes that Movant's claim might carry more weight, possibly even

---

[3] The Government notes that when it anticipates a further sentence reduction based upon a defendant's cooperation, it employs much different language than that used in Movant's plea agreement. (Doc. 196 at 17 n.8).

AO 72A
(Rev.8/8
2)

requiring an evidentiary hearing, if his Plea Agreement was silent on the question of whether he might be eligible for further sentence reductions after his testimony at the McCray trial, but that is not the case here.  (*Id.* at 18 n.9).

Finally, the Government argues that Movant has not shown that he was prejudiced by counsel's allegedly deficient performance because there is no evidence that the Government ever offered, or would have offered, a sentence reduction beyond the 84-month reduction resulting from the dismissal of count two.  (*Id.* at 21-22).  "The deal that [Movant] now says he accepted, a plea that offered both a dismissal of Count Two and a potential reduction in sentence motion, never existed.  Simply put, the government never offered what [Movant] claims his attorneys' ineffective assistance 'cost' him."  (*Id.* at 22 (citation omitted)).  The Government argues that Movant's contention—that if he had known that he would receive no further sentence reduction he would have "stood trial"—is not credible in light of McCray's 186-month sentence, 84 months of which was a mandatory consecutive sentence on count two.  (*Id.* at 22-23).  Finally, the Government notes that a defendant is never entitled to a 5K motion from the Government for a sentence reduction, nor is he entitled to a particular sentence, which Movant understood when he pled guilty.  (*Id.* at 23-24 (noting that misinformation about the length of a possible sentence does not render a guilty plea

12

unknowing when defendant is informed, as Movant was here, of the maximum

sentence he faces)).

**C.    Movant's Reply**

Movant replies that the email exchanges attached to the Government's response

reveal that he agreed to the original plea offer from the Government by January 20,

2012, based on the Government's own deadline, and that it was only on January 23,

2012, that the Government proposed two "modifications" to the agreement, one of

which was the new, second paragraph included in the Charge Bargain, which stated

that there would be no further sentence reductions.  (Doc. 197 at 2-3).  Movant argues

that he would not have accepted this "modification" unless his counsel had advised

him that the Government would move to reduce his sentence at some later date.  (*Id.*

at 3).  Movant argues that his allegedly knowing and voluntary plea was tainted by the

misinformation he received from his counsel, so that "either [his] counsel used

erroneous inducements to compel his guilty plea or the government did make such

promises and if so, it was counsel's duty . . . to have the promise memorialized."  (*Id.*

at 4-5).   "Clearly, it should be logically conceived that [he] did not simply agree to

testify against McCray for the government without reasonably believing that he would

receive a sentence reduction lower than the projected sentencing range in the January

AO 72A
(Rev.8/8
2)

12, 2013, plea offer." (*Id.* at 5). Accordingly, Movant asserts, an evidentiary hearing is required to sort out his claim. (*Id.* at 6-7).

**III.**   **Discussion**

**A.**   **The Legal Framework**

A federal prisoner may file a motion to vacate his or her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). It is well-settled that "to obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).

"A guilty plea is knowing and voluntary if the defendant entered the plea without coercion and with the understanding of the nature of the charges and the consequences of the plea." *United States v. Speight*, 454 Fed. Appx. 785, 787 (11th Cir. 2011), *cert. denied*, 132 S. Ct. 2726 (2012); *see United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000) ("When accepting a guilty plea, a court must address three core concerns . . . : (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must

14

know and understand the consequences of his guilty plea." (internal quotations omitted)); *see also United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (same).

In *Speight*, the Eleventh Circuit denied appellant's challenge to her guilty plea, in which she claimed that her plea was unknowing and involuntary with respect to her potential sentences due to counsel's deficient advice, because "during her [plea] hearing she responded to the sentencing judge that she understood the penalties she faced." 454 Fed. Appx. at 788 (quoting *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994), to the effect that "[t]here is a strong presumption that the statements made during the [plea] colloquy are true"; and concluding that appellant "failed to demonstrate that she would not have pled guilty but for counsel's errors"). Evidence that an accused entered his guilty plea knowingly and voluntarily includes "[s]olemn declarations in open court," which "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-75 (1977) (noting that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," but also noting that "the federal courts cannot fairly adopt a *per se* rule excluding all possibility that a defendant's representations at the time his guilty plea

AO 72A
(Rev.8/8
2)

was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment").

The Supreme Court set forth the standard for evaluating a claim of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a court determines "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. Second, a court determines whether counsel's challenged acts or omissions prejudiced the defendant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The *Strickland* test also applies in the context of a guilty plea, where, generally, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also United States v. Broce*, 488 U.S. 563, 569 (1989) (stating that "when the judgment of conviction upon a guilty plea has become final and the offender seeks to

16

reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary"). However, "[i]n *Missouri v. Frye*, 132 S. Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), the Supreme Court held that the Sixth Amendment right to effective assistance of counsel extends to plea negotiations. *Frye*, 132 S. Ct. at 1404-08; *Lafler*, 132 S. Ct. at 1384." *Frank v. United States*, No. 12-13930, 2013 U.S. App. LEXIS 13370, at *4 (11th Cir. July 1, 2013) (citations altered).

> Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during plea negotiations. *Lafler*, 132 S. Ct. at 1384 (internal quotation marks omitted). The [Supreme] Court also . . . concluded that, in order to show [*Strickland*] prejudice, a defendant must demonstrate a reasonable probability that: (1) he would have accepted a plea offer but for counsel's ineffective assistance; (2) the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it; and (3) the plea would have resulted in a lesser charge or a lower sentence. *Frye*, 132 S. Ct. at 1409; *Lafler*, 132 S. Ct. at 1384-85.

*Id.* at *4-5 (citations altered).

**B.**   **Analysis**

Movant's claim of ineffective assistance of counsel fails. The terms of the Plea Agreement clearly indicated that Movant was to receive no benefit aside from the dismissal of count two. (*See* Doc. 57-1 at 5; Doc. 191 at 34). Movant acknowledged

17

in writing and under oath at his plea hearing that he understood and accepted those terms (*see* Doc. 57-1; Doc. 68 at 9-10),  and, after pleading guilty, he testified under oath at McCray's trial that he understood that he was to receive no further benefit as a result of his cooperation with the Government (*see* Doc. 182 at 149); *see also Blackledge*, 431 U.S. at 73-74 (noting that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings").  Movant's contention appears to be that there was a secret agreement between himself and the Government, negotiated by counsel but not memorialized, providing for a lesser sentence than the one he received, although Movant acknowledged under oath at his own plea hearing and again later at the McCray trial that no such agreement existed.  (*See* Doc. 68 at 9-10; Doc. 182 at 149).  Movant's claim of ineffective assistance of counsel based on this contention fails.

Moreover, Movant has not demonstrated a reasonable probability that, absent counsel's allegedly misleading advice, he would have been in a position to accept a plea offer for "a lesser charge or a lower sentence." *See Frank*, 2013 U.S. App. LEXIS 13370, at *5.  Movant has not shown that the Government ever made him such an offer, and the record evidence indicates that it did not.  Thus, even if Movant's counsel

18

misled him about what the Government intended to do for him in exchange for his testimony against McCray, Movant suffered no prejudice thereby because he did not, as a result, forego a better plea deal.  *See Frank*, 2013 U.S. App. LEXIS 13370, at *6-7 (concluding that appellant's claim of ineffective assistance of counsel with respect to his guilty plea negotiations failed because he had not shown that he was prejudiced by counsel's allegedly deficient performance); *Speight*, 454 Fed. Appx. at 788 (finding no prejudice to appellant from counsel's allegedly deficient sentencing advice because appellant acknowledged at her plea hearing that she understood her potential sentences).[4]

## IV.   Certificate of Appealability

A federal prisoner must obtain a certificate of appealability (COA) before appealing the denial of a motion to vacate.   28 U.S.C. § 2255(d); 28 U.S.C.

---

[4] Movant asserts, almost in passing, that absent counsel's misleading advice he would have "stood trial" rather than accept the government's final plea offer. (*See* Doc. 191 at 18; *but see id.* at 26 (where Movant fails to mention proceeding to trial as an alternative he might have pursued)).  The 87-month sentence that Movant received was, by his own admission, the precise sentence he already had bargained for and agreed to before counsel's allegedly misleading advice, i.e., a sentence at the top of his sentencing guideline range. (*See id.* at 19-20).  There is no evidence in the record that Movant was ever interested in going to trial and risking a conviction on both counts of the indictment, which would have required a consecutive 84-month sentence on count two alone, just as McCray received. (*See* Doc. 157).

19

§ 2253(c)(1)(B).  A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted).  A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (internal quotations omitted) (citing *Slack*, 529 U.S. at 484).

Although *Slack* involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here.  *See Jones v. United States*, 224 F.3d 1251,

20

1254 (11th Cir. 2000) (applying *Slack* standard in § 2255 case).  Because there is no reasonable argument that Movant was prejudiced by counsel's advice regarding the potential benefit to him of his plea agreement, a COA is not warranted here.

**V.   Conclusion**

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **DENY** Movant's 28 U.S.C. § 2255 motion to vacate (Doc. 191) and **DENY** Movant a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO RECOMMENDED** this 22nd day of August, 2013.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)